No. 35,747

Mary O. Jones and Samuel D. Petrie, *Appellants*, v. Benjamin R. Petrie, Sylvia Carroll et al., *Appellants* (Mack Crick, known as McClellan Crick et al., *Appellees*).

(132 P. 2d 396)

Opinion filed January 9, 1943.

*R. F. Crick, M. C. Bucklin,* both of Pratt, and *H. E. Walter,* of Kingman, were on the briefs for the appellants.

*George Barrett,* of Pratt, was on the briefs for the appellees.

The opinion of the court was delivered by

Allen, J.: This was an action in partition. All parties to the action claim as devisees under the will of L. R. Crick, who died November 17, 1917.

Omitting formal parts, the will provides:

"1. I give and bequeath to my dear wife, Lena Crick, all my personal property to be hers absolutely,, she to pay all my just debts and funeral expenses out of the same.

"2. I give and bequeath to my wife, Lena Crick, the southwest quarter (¼) of section twenty-nine (29) in township twenty-one south, of range thirty (30) west of the 6th P. M., situated in Finney county, Kansas.

"3. I give and bequeath to my wife, Lena Crick, whatever interest I have in land owned by my father James H. Crick, and mentioned in his last will and testament and bequeathed to me and my brother subject to certain payments of money to be made to my sisters, and my nephews, and subject to the life estate of my mother, Rachel Crick. My wife shall make the payments to my sisters and nephews as provided in my father's will and do all that I am enjoined to do in my father's will as to said real property. My wife shall have a life estate in said land after my mother's death subject to

the payments to my sisters and nephews heretofore mentioned. On the death of my wife my share in said land shall go to my nephew, Charles Edward Crick, and I give and bequeath the same to him.

"4. Our home place (description of land) I give and bequeath to my wife, Lena Crick, for her use and benefit for and during her lifetime, the remainder at her death to be divided among the other heirs of my wife and myself, the heirs of my wife to take a one-half (½) interest and my heirs to take the other one-half (½) interest, and I give and bequeath such remainder to such heirs of myself and my wife.

"5. Whatever of my estate remains, real or personal, at the death of my wife I give and bequeath to the other heirs of myself and wife, to be divided as provided for the real property mentioned in paragraph IV of this will, one-half (½) to her heirs and one-half (½) to my heirs."

The following stipulation appears in the record:

"It is stipulated that L. R. Crick, late a resident of Pratt county, Kansas, executed his will on the 8th day of October, 1917, and died on the 17th day of November, 1917. That thereafter, on the 17th day of December, 1917, the last will and testament of L. R. Crick was duly proved and admitted to probate in the probate court of Pratt county, Kansas. That the testator, L. R. Crick, at the time of the execution of the will was 46 years of age; that he died childless and left as his sole and only heir at law Lena Crick, his widow, aged 44 years. The testator's father, James H. Crick, preceded the son in death, having died on November 22, 1911. The testator's mother, Rachel Crick, then 79 years of age, died subsequent to the son on the 21st day of October, 1924. The mother died testate and her will was duly admitted to probate in the probate court of Pratt county, Kansas, on the 24th day of October, 1924. The testator also left surviving him brother and sisters, nephews and nieces, who are parties to this action.

"The probate filed in the estates of L. R. Crick and Rachel Crick are to be considered as exhibits in the presentation of this matter, insofar as they may be relevant.

"It is admitted by all that the distribution of the one-half of this land devised to Lena Crick's heirs, after Lena Crick's life estate had been terminated by her death, could not have been made until her death occurred and her life estate terminated. Prior to the date of her death her heirs were not known."

As stated in the last clause of the above stipulation, we are not called upon to determine the destination of the undivided one-half interest which was limited to Lena Crick for life with remainder to her heirs.

Under the terms of the will the other undivided one-half interest was given to the widow, Lena Crick, for life with remainder to the heirs of the testator.

Under a well-settled common-law rule, if a testator undertakes to devise to an heir exactly the same interest in land as such devisee

would take by descent, he would take by descent and not by devise, descent being regarded as the worthier title. So, if a testator by his will gave a life estate to one person with a remainder in fee to the heirs of the testator, such attempted remainder was void. The result was that only a life estate was created and the heirs of the testator would take by intestate succession. In other words, the heirs would have a reversion and not a remainder. (Tiffany on Real Property, 2d ed., sections 130 and 487; *Ellis v. Page,* 7 Cush, [Mass.] 161.)

In *Bunting v. Speek,* 41 Kan. 424, 21 Pac. 288, the testator devised land to his wife for life and then "to descend to my legal heirs." The court held that the heirs of the testator had a vested remainder under the will as purchasers, thus repudiating the worthier-title doctrine as applied to wills. (The common-law doctrine has been abrogated by the property act of 1939, G. S. 1941, Supp. 58-506.)

As the remainder to the heirs of the testator is valid we must ascertain what group or class of persons is entitled to take. Are we to apply the statute of descents as of the date of the death of the testator or the date of the death of the life tenant? On the date of the death of the testator his widow, Lena Crick, was his sole heir. She was given a life estate in the property. Under our statute of intestate succession she was the sole member of the class to answer the description of heirs of the ancestor at the date of his death. After giving his wife a life estate, was it the intention to give her the remainder in fee?

Counsel for appellants point to the clause in paragraph four of the will, "the remainder at her death to be divided among the other heirs of my wife and myself," and in paragraph five, which recites that "at the death of my wife, I give and bequeath to the other heirs of myself and my wife," and argue (1) the wife is expressly excluded as an heir, preventing the fee simple from vesting in her, and (2) that the remainder vested in Rachel Crick, the mother of the testator, who survived her son. It is further contended that as the mother, Rachel Crick, died testate, the devisees under her will would upon the death of the life tenant be entitled to the one-half interest that was devised to the wife for life with remainder to the heirs of the testator.

But the question presented is whether the statute of intestate succession is to be applied as of the date of the death of the testator or the date of the death of the life tenant.

The rule is well recognized in this court that the vesting of estates at the earliest possible moment is favored in the law, and uniformly this court has held that estates given by will take effect and become vested on the death of the testator, where a contrary intent does not appear. But the rule favoring vesting of estates at the earliest possible moment must not be applied to frustrate the manifest intent of the testator. In the construction of wills the cardinal canon, the guiding polar star, is that the intent of the testator must govern, and when that intent is found from the four corners of the instrument the duty rests upon the court to effectuate it if it may lawfully be done.

At the time judgment was entered, the trial court submitted a memorandum opinion from which we quote:

"What was the position of the testator at the time of the execution of the will? From all of the facts before the court it appears that the testator was a farmer. He was 46 years of age and childless. He was, no doubt, fond of his wife, who was 44 years of age. His father was dead. His mother, aged 79 years, was still living. He also had four sisters and one brother living, and also numerous nieces and nephews, children of a deceased sister. The will, being drafted by a lawyer at the home in Haynesville township, on October 8, and the testator having died on November 17, following, indicates that the testator was perhaps then in ill health, and that he anticipated that death was not far distant. The father, in his will, had made some provision, at least, for the aged mother. The testator and his wife were in agreement as to the final disposal of his estate. Apparently, the wife was to have the benefit of the whole during her lifetime, and after her death, whatever remained was to be divided, one-half to her people and one-half to his people.

"As to the above facts, there is little, if any, dispute. As the will actually speaks, however, did the testator intend that the half going to his people should be divided, become vested, at the time of his death or at the time of his wife's death? The intention of the testator, if ascertainable, is controlling. Legal rules are for the purpose of ascertaining such intention, not contradicting or obscuring it. Certain simple rules, we may presume, the testator fully understood, viz.: that a living person (his wife) has no heirs; that on his death his wife would be his sole heir, if living, and, if not, his mother. That after the death of his wife and mother, his brother and sisters would be his heirs.

"Out of the half section of land involved, did the testator intend to carve two remainder estates, one vesting, being subject to division, upon his death, very shortly, and the other to his wife's people, not vesting or being subject to division, until her death, perhaps many years in the future? Or, did he intend to leave one remainder estate, vesting and divisible into two equal parts, at his wife's death? The will gives no indication of any intention to discriminate between his people and her people. The wife could have no heirs until her death. Therefore, the half, to her people, could not previously vest.

"This court is of the opinion that the testator intended to create only one

remainder estate, vesting, on the death of the wife, one-half in her heirs and one-half in the testator's heirs at said time. The testator must have known that his wife was his heir if she survived him, and, if not, then that his mother would be his sole heir. In paragraph III the testator said: 'My wife shall have a life estate in said land after my mother's death. . . .' Thereby definitely evincing a belief that his wife would outlive his mother. A natural belief: the wife was 44, the mother 79. The wife did survive the mother about 17 years. The testator gave a life estate, at least, in all his property to his wife. His father had provided for his mother. His wife was his principal concern, and after her death, his mother then probably being dead, he reasoned, 'the remainder at her death to be divided among the other heirs of my wife and myself, the heirs of my wife to take a one-half interest and my heirs to take the other one-half interest.' Had decedent intended the half going to his people to vest immediately, he, then being near death, and his mother still surviving, surely would have made more specific reference to' her. She was then in such health that she actually did survive her son nearly seven years.

"The law favors the early vesting of estates. I do not find such an intention expressed in the will of this decedent. On the contrary, it seems apparent that the testator intended to devise only one remainder estate, one-half of which could not vest until the death of his wife, and, therefore, he intended the whole as contingent until said time, when one-half would vest in the heirs of his wife and the other half in the heirs of the testator."

In *Heard v. Read*, 169 Mass. 216, 47 N. E. 778, the testator devised land to trustees to pay the net income to his daughter Elizabeth for life and in the event she should die without issue surviving her, one-half of the property "shall be divided among my heirs at law as though I died intestate." In holding the heirs of the testator were to be determined as of the time of the death of the life tenant, the court stated:

"It is argued that it is a well-established rule of law that, when a testator in his will refers to his heirs at law as persons to take any part of his estate, he is presumed to mean his heirs to be determined as of the time of his death, unless it plainly appears that he intends that the heirs should be determined as of some other time. This rule, it is said, was originally established on the ground that the law favors vested rather than contingent remainders. But since contingent remainders in property are within certain limits protected by the law, and are now held to be alienable, descendible, and devisable in the same manner as vested interests, and testators are permitted to make such lawful disposition of their property as they see fit, there is no reason why their intentions as expressed in their wills, so far as the law permits, should not specifically be carried into effect. The tendency of the modern cases is therefore to put the reason of the rule, not on any fondness which the law has for vested over contingent interests, but upon the fact that heirs at law by the very meaning of the words are usually those persons who take inheritable real property immediately on the death of the owner if he dies intestate. When,

therefore, these words are used in a will without anything to modify their meaning, it reasonably may be taken that they mean those persons who would have taken the real estate of the testator as of the time of his death if he had died intestate. Upon the question whether the customary meaning of these words when used in a will is to be regarded as modified by the other provisions of the will, not only particular clauses but the whole scope of the will must be considered. The rule contended for is not a rule of substantive law, but a rule of intrepretation which has been adopted by the courts as one means of ascertaining the intention of the testator as expressed in his will, and it never should be used to defeat what from the whole will appears with reasonable certainty to have been his intention. It has been intimated by this court, but with some doubt, that where property is given by will to a person for life, and on his death without issue surviving him to the testator's heirs at law, and it is known to the testator at the time when the will is made that that person is his sole heir presumptive and probably will be his sole heir when he dies, if such person survive him, it is to be inferred that that person is not intended by the designation of the testator's heirs at law. But in the cases actually decided in this commonwealth there were other provisions in the will which supported this construction. The cases generally on this subject have been often considered by this court. The present tendency in this country is against absolute rules of construction, and in favor of a careful consideration of the particular language of each will, as well as of its general scope and purpose, in order to determine, in view of the circumstances known to the testator when the will was made, his intention as expressed in it." (p. 222.)

See *Welch v. Brimmer*, 169 Mass. 204, 47 N. E. 699, where the testator devised land to his only son and presumptive heir in fee, and upon his death without leaving issue him surviving then to go "to my heir or heirs at law." In holding the property went to the heirs of the testator living at the death of the son, the court was influenced by the manifest incongruity of giving the son a fee and then, if the son die leaving no issue surviving him, to divest him of it in order to give it back to him in fee under the designation of heir or heirs of the testator.

In *Bailey v. Bailey*, 25 Mich. 185, where the testator gave his wife a life estate in the homestead with remainder "to my lawful heirs," provision was also made for her in other portions of the will. Mr. Justice Campbell, speaking for the court, said:

"The testator, then, evidently had it in his mind to provide definitely and immediately for the comfort and support of his widow, and as there are three distinct bequests for her advantage, and these constitute the chief provisions of the will, the others being trifling in comparison, the inference is irresistible that in the absence of some clear direction to the contrary, he must have intended that she should have no more than was thus given to her. Had he

designed to give her any further share in his estate, it would have been most natural to say so. She was in his mind from first to last as the principal person to be provided for, and with all these special and precise directions in her favor, it cannot be presumed he omitted anything that he designed to insert for her benefit." (p. 189.)

We quote Restatement of Property, § 308 and part of *Comment k* thereunder:

"When a limitation is in favor of the 'heirs,' 'heirs of the body,' 'next of kin' or 'relatives' of a designated person, or in favor of other groups described by words of similar import, and the persons who come within the term employed to describe the conveyees are to be determined by a statute governing the intestate succession of property, then the statute is applied as of the death of the designated ancestor, unless an intent of the conveyor to have the statute applied as of some other date is found from additional language or circumstances.

"*k. Contrary intent—Postponing time of statute's application—Prior interest in sole heir or next of kin.* If a person to whom a prior interest in the subject matter of the conveyance has been given is the sole heir of the designated ancestor at the death of such ancestor, there is some incongruity in also giving such person all the interest under the limitation to 'heirs' or 'next of kin.' The incongruity is especially great when A by will conveys property 'to B and his heirs but if B dies without issue to my heirs' and B is the sole heir of A. The incongruity is almost as great when A, by will, conveys property 'to B for life then to my heirs' and B is the sole heir of A. Thus, the fact that in such cases, B is the sole heir of A at the death of A tends to establish that A intended his heirs to be ascertained as of the death of B, so that B is prevented from sharing in the limitation to the heirs of A."

Upon a careful consideration of the particular language of the will, viewed in the light of the circumstances known to the testator at the time the will was made, we think the heirs of the testator mentioned in the will must be determined as of the date of the death of the life tenant.

The judgment is affirmed.

HARVEY, J., concurs in the order of affirmance.