JOHN J. HANLEY ET AL., APPELLANTS AND CROSS-APPELLEES, v. NELLIE HOUSE MONTGOMERY CRAVEN ET AL., APPELLEES AND CROSS-APPELLEES, OLIVE SHOULTS ROSENBERGER ET AL., APPELLEES AND CROSS-APPELLANTS, IMPLEADED WITH ARTHUR F. MULLEN ET AL., APPELLANTS AND CROSS-APPELLEES.

263 N. W. 2d 79

Filed February 15, 1978. No. 41249.

Edmund D. McEachen and Michael G. Lessman of Baird, Holm, McEachen, Pedersen, Hamman & Haggart, Bernard T. Pipher, Thomas C. Emery, and Kenneth H. Beckenhauer of Beckenhauer & Beckenhauer, for appellants and cross-appellees.

Warren S. Zweiback of Zweiback, Brady, Kasher, Festerson & Pavel, and Daniel J. Duffy of Cassem, Tierney, Adams & Gotch, for appellees and cross-appellees.

Warren S. Zweiback of Zweiback, Brady, Kasher, Festerson & Pavel, for appellees and cross-appellants.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, BRODKEY, and WHITE, JJ., and RONIN, District Judge.

SPENCER, J.

This is an action to quiet title in certain lands in Thurston and Cuming Counties; to establish the ownership of certain fractional interests in the land; and to enter a decree of partition. The case involves the validity of certain quit claim deeds given pursuant to contracts for attorneys' fees. Their validity in the first instance requires an answer to the question as to whether the remainder interest in the property vested at the time of the death of the testator in 1926, or at the death of the life tenant in 1974. The original action was filed September 19, 1974, more than 3 months prior to the death of the life tenant. Trial was had on an amended petition filed after her death.

The trial court determined the remainder interest in the real estate vested at the time of the death of the testator. However, the court held the deeds were unenforceable due to the failure of those claiming thereunder to prove enforcement would not be unfair or inequitable. We reverse the judgment of the trial court but sustain the dismissal of the plaintiffs' action.

John R. House died testate December 24, 1926, seized of the land in question, as well as other property. The other property not involved herein was devised to his wife Emma House, who survived him. The real estate involved herein was covered by paragraph Third of his will. So far as material, it provides as follows:

"Third, I give, devise and bequeath to my beloved daughter, Nellie House Montgomery Craven, all the income over and above the taxes, and necessary expenses or upkeep during her lifetime from the following described real estate: (legal description of the land involved here.)

"I give, devise and bequeath the land described in the foregoing paragraph to my executor in trust, to pay said income therefrom to my said daughter. If

my said daughter die without issue, then said real estate described in this pargraph shall descend at her death to my heirs-at-law, by blood relation. If my said daughter dies leaving issue then said real estate is to go to her issue absolutely. * * *

"* * * it being my intention hereby to convey and devise unto my executor the above described real estate from which my said daughter is to get the net income, in trust, for the payment of said income to my daughter during her life and at her death without issue surviving her, said real estate shall descend to my heirs-at-law who are related to me by blood, and that if she die leaving issue surviving her, then said real estate shall descend to her lineal heirs-at-law absolutely in fee simple."

At the time of his death, John R. House was survived by the following blood relatives: His daughter Nellie; his nephews, Arthur David House and John Jacob House, sons of his deceased brother Jacob House; his nephew Joseph E. House, son of his deceased brother Joseph House; and his nieces, Alice House Shoults and Lizzie House Shoults, daughters of his deceased brother Edward House. At the date of the death of John R. House, his only issue, Nellie House Montgomery Craven, was childless. She died without issue at 91 years of age, on December 29, 1974.

The will of John R. House was admitted to probate in the county court of Thurston County on February 28, 1927. The probate continued without incident until October 15, 1929. At that time, more than a year and a half after the will was admitted to probate, the daughter instituted an action in county court to revoke the order of probate. This began extended litigation over the probate of the will which finally brought the matter before this court in the case entitled In re Estate of House, 129 Neb. 838, 263 N. W. 389 (1935).

It was as the result of this will contest litigation

that ancestors of the plaintiffs acquired the deeds under which they are claiming an interest in the land. The plaintiffs are the devisees and grantees by mesne conveyances of James H. Hanley, John C. Mullen, and T. Joseph Byrth, who were the attorneys engaged by the remaindermen to resist the setting aside of the probate of the will. The Hanley-Mullen representation and appearances in the will contest litigation began with pleadings filed in the county court of Thurston County on December 11, 1929, on behalf of nieces Alice House Shoults and Lizzie House Shoults, resisting Nellie Craven's petition to revoke the order of probate. Pleadings were filed on behalf of the nephews Joseph E. House and Arthur David House by the Hanley-Mullen representation on January 7, 1930. No court appearances were made by the Hanley-Mullen representation on behalf of the nephew John Jacob House.

The fee contracts in evidence, providing for an interest in the remainder interest of the heirs, were drawn by James Hanley and are identical in terminology with the exception of the signature line, the gender, the date and place of execution, and except that the fee contract signed by Joseph E. House had varying provisions which will be hereafter noted. The basic contract in its relevant parts provided as follows:

"Whereas, the undersigned is a blood relation and one of the heirs of John R. House, deceased; and

"Whereas, the said John R. House, prior to his death and on or about the 23d of December, 1926, made a last will and testament, the third paragraph of which will is as follows: * * *

"Whereas, Nellie House Montgomery Craven, the daughter of said John R. House, mentioned in said paragraph three of said will is childless and will die without issue * * *

"Whereas, the purpose of the proceeding now pending in the County Court of Thurston County, Ne-

braska is to deprive the undersigned blood relation and heir of the said John R. House of the interest, right and title that she (he) has in and by virtue of the provisions of the will of the said John R. House; and

"Whereas, the undersigned is the niece (nephew) of the said John R. House, deceased, and is interested in said estate; * * *

"THEREFORE, it is agreed by and between the said (niece or nephew) of (city and state) party of the first part, and the said James H. Hanley of Omaha, Nebraska, party of the second part, WITNESSETH:

"That the party of the first part does employ and retain the party of the second part to act as attorney for the party of the first part * * * and the said party of the second part is to have full and complete control over said litigation; that no settlement or compromise shall be made, either by the party of the first part or by the party of the second part, without the written consent of the other.

"That the party of the first part is to pay to the said party of the second part, as fees for his services in the County Court of Thurston County, Nebraska, a sum equal to one-third of the amount received or recovered by the party of the first part under and by virtue of the provisions of the will of the said John R. House, deceased, and, in the event the said proceedings are appealed, transferred or removed from said County Court of Thurston County, Nebraska to another court or courts, then the party of the first part shall pay to the party of the second part, a sum equal to one-half the amount received by the party of the first part under the provisions of the will of the said John R. House, and that said fees shall be a lien upon whatever interest or rights the party of the first part has or may have in the property described in the third paragraph of the will of the said John R. House, deceased.

"* * * and that the said party of the first part does by these presents grant and confirm to the party of the second part an interest in and a lien upon the property described in the third paragraph of the will of the said John R. House, deceased, for the amount due to the party of the second part for services rendered as attorney for the said party of the first part.

"Dated this ____ day of _____, 19____, at _____.

"(signed by niece or nephew)
"Party of the First Part
"/s/ James H. Hanley
"Party of the Second Part."

The contract with Joseph E. House provided for a flat fee of: "a sum equal to one-half of the amount received or recovered by * * * (him) * * * by virtue of * * * the will * * *." It went on to provide that the fee was to be split "one-third of said fee to said T. Joseph Byrth and two-thirds of said fee to said James H. Hanley * * * regardless of the amount involved."

The dates the fee contracts were executed by each niece and nephew are as follows:

| | | |
|---|---|---|
| A. | Lizzie | November 29, 1929 |
| B. | Alice | November 29, 1929 |
| C. | Joseph | February 20, 1930 |
| D. | Arthur | March 21, 1931 |
| E. | John Jacob | December 17, 1933 |

Appellees urge the invalidity of the contracts because they were executed after the attorney-client relationship had commenced, and there was no compelling proof of their fairness.

Nellie's petition to revoke the probate was grounded on her allegation that the executor and his attorney intentionally and fraudulently concealed from her the mental and physical incompetency of the testator to make the will. The will was executed December 23, 1926, the day before his death. The nature of

the instrument indicates a death bed document. Nellie alleged she brought the action immediately upon the discovery of the facts as to the incompetency of the testator. The county court, on December 11, 1929, entered a decree revoking the order admitting the will to probate. It subsequently found the instrument was not the last will and testament of John R. House. The case was appealed to the District Court where it was tried twice. In the first trial the court ruled the case should be tried to the jury on the contest of the will. It was so tried, and the jury disagreed. In the second trial the judge followed the same procedure, and the jury returned a verdict finding the will to be the last will of John R. House, deceased. The judge ordered the will should stand as originally admitted to probate. That decision was appealed to this court. This court held the cause never reached the stage where it was necessary to submit any feature of it to the jury. The issue to be first decided in the District Court was whether the county court was justified in revoking the probate. This court affirmed the decision that the will should stand as originally probated.

After the decision of this court on November 15, 1935, certain of the nephews and nieces, and their respective spouses, executed the quit claim deeds which plaintiffs seek to enforce. Alice Shoults and Lizzie Shoults executed the same quit claim deed, dated and acknowledged January 17, 1936, conveying an undivided one-half of all right, title, interest, estate, claim, and demand both at law and equity in the real estate, to James H. Hanley and John C. Mullen.

Arthur executed and acknowledged a quit claim deed on May 20, 1939, conveying one-half of the right, title, interest, estate, or claim and demand, both at law and in equity of an undivided one-half interest in the real estate in question.

Joseph executed and acknowledged a quit claim

deed on January 15, 1936, conveying an undivided 2/6ths interest to James H. Hanley and Arthur F. Mullen, and an undivided 1/6th interest to T. Joseph Byrth "of all our right, title, interest, estate, claim and demand both at law and in equity, of, in, and to the * * * real estate" involved herein.

John Jacob House did not execute any deed in favor of the attorneys. By the quit claim deeds the attorneys ostensibly acquired a 35 percent interest in the remainder of the trust property. They acquired ½ of the purported interests of Alice and Lizzie; ½ of the interest of Joseph; and ¼ of the interest of Arthur, or 21/60ths of the interests of the nephews and nieces.

On July 2, 1936, Hanley and Mullen filed an action in the federal District Court at Omaha, Nebraska, for Alice House Shoults, Lizzie House Shoults, Arthur D. House, John J. House, and Joseph E. House, against Nellie House Montgomery Craven, Emma A. House, William T. Craven as administrator of the estate of John R. House, deceased, and Paul A. Pinion as executor and trustee of the estate of John R. House, deceased, defendants, seeking a judgment of $30,000 for expenses and attorneys' fees incurred by plaintiffs by reason of the fact that defendants attempted to set aside the probate of the will of John R. House, deceased. Based upon the 1926 expectancy tables, the remainder interest would have had a value of approximately $50,000. The plaintiffs alleged that in the event they did not survive the defendant Nellie House Montgomery Craven they would never receive any part of said estate and it would be inequitable and unjust for them to pay their attorneys for the services rendered as proponents of the will of John R. House, deceased. On March 29, 1937, Hanley and Mullen, joined by T. Joseph Byrth, filed a petition of intervention in the action, in which Hanley and Mullen were representing the plaintiffs, alleging that they were entitled to

compensation for their services in the full amount of the consideration stipulated in their several contracts of employment. The interveners prayed that a judgment be entered in their favor against defendants; that a lien be impressed upon the trust estate in an amount equal to the difference between the amount of judgment assessed against defendants and the full value of interveners' services as agreed upon by the plaintiffs and interveners.

Judgment was rendered against the defendants on August 12, 1937, in the amount of $19,179.75, or $17,500 plus costs incurred of $1,679.75. This judgment was appealed to the Circuit Court of Appeals, which on August 10, 1938, affirmed the judgment as to the court costs but found the fee allowed by the federal District Court to be excessive. The Circuit Court found a proper fee for the services rendered was $7,500. The Circuit Court specifically found the federal District Court had estimated the amount of property involved as being the value of the entire estate. This determination it held to be erroneous. It held the only property involved was the trust property. It found the value of the land at the death of the testator passing into the trust was about $106,000. Judgment was entered on the mandate on the 23rd day of September 1938, for $9,793.27, being $1,679.75 for expenses advanced by the plaintiffs, $7,500 attorneys' fees, and the sum of $613.52 as interest on the sum of $9,179.75 from August 12, 1937, to September 23, 1938. This amount was collected by the attorneys. Appellees argue this represented payment in full for the services rendered by the attorneys.

To put the case in proper perspective, it is now necessary to consider the exceptions of the plaintiffs-appellants who claim under the respective quit claim deeds. They assign as error: (1) The failure of the District Court to establish their claim of a 35 percent interest in the real estate; (2) the failure to hold that as against the successor in title under the

quit claim deeds the descendants of the grantors of the deeds were barred by the statute of limitations; and (3) the failure to find that even if it was appropriate to look behind the deeds to the contingent fee contracts and their execution and to place the burden of proof upon the successors in interest, the plaintiffs met their burden of proof on such issue.

The heirs of Alice House Shoults as a class allege the District Court decided all issues correctly.

Appellees Robert F. House and James Joseph House assign as error: (1) The failure of the court to hold title to the subject property vested only in the heirs-at-law by blood relation of John R. House, determined as of the date of the death of Nellie House Montgomery Craven, December 29, 1974; (2) the failure to hold the Hanley-Mullen-Byrth interests are barred from recovery by reason of the statute of limitations; (3) the failure to hold the Hanley-Mullen-Byrth interests had been paid everything properly due them; and (4) the failure to hold the grandchildren of deceased brothers of John R. House, who survived Nellie Craven, should take the property described in paragraph Third of the will of John R. House per capita to the exclusion of great grandchildren of deceased brothers.

The appellees, descendants of Lizzie House Shoults, filed a brief as appellees and a brief on cross-appeal. In their cross-appeal they assign as error the failure of the District Court: (1) To hold title to the subject property vested in the heirs-at-law by blood relation of John R. House, determined as of the date of December 29, 1974; (2) to hold the Hanley-Mullen-Byrth interests barred by reason of the statute of limitations; (3) to hold the Hanley-Mullen-Byrth interests have been paid everything properly due them; and (4) to hold the grandchildren of deceased brothers of John R. House, who survived Nellie Craven, should take the property described in paragraph Three of the will of John R.

House per capita to the exclusion of great grandchildren of deceased brothers.

The threshold legal issue presented herein is the date of the vesting of the remainder interest. The trial court found it vested on December 24, 1926, the date of the death of John R. House, in Arthur David House, John Jacob House, Joseph E. House, Lizzie House Shoults, and Alice House Shoults, each acquiring an undivided one-fifth interest on said date. This conclusion is erroneous and is reversed.

We have repeatedly held the law favors the early vesting of estates and a remainder will be declared a vested one unless a contrary intent is apparent from the will. Berning v. National Bank of Com. Tr. & Sav., 176 Neb. 856, 127 N. W. 2d 723 (1964). In this instance we believe a contrary intent is apparent.

Appellees argue it was the intention of the testator to provide for vesting at the death of his daughter. They argue that otherwise she would be his heir-at-law by blood relation. The appellants contend, by the terms of the will, the testator was excluding his daughter from the term "heir-at-law by blood relation." That contingency was only to be operative if the daughter died without issue.

In Wilkins v. Rowan, 107 Neb. 180, 185 N. W. 437, filed November 17, 1921, or 5 years previous to the will in question, this court said: "The policy of the law has always been to look with favor upon the early vesting of estates, and a remainder will never be held to be contingent if it can reasonably be held to be a vested remainder." The following quotations from that case are pertinent herein: "1 Schouler, Wills, Executors and Administrators (5th ed.) sec. 562, states: 'In short the law does not favor the abeyance of estates but estates by way of remainder vest at the earliest period possible, unless the will shows a contrary intention. And vested interests liable to devestment are preferred in construction to interests contingent.'

"2 Alexander, Commentaries on Wills, sec. 1005, states: 'It is not the certainty of possession or enjoyment which distinguishes a vested remainder, but the certainty of the right of future possession or enjoyment if the remainderman, who is ascertained, lives until the determination of the preceding estate. Where the devise is to the remainderman "from and after" or "after" or "at" or "on" the death of the life tenant, or words of similar import are employed, such expressions are construed as relating to the time of the enjoyment of the estate and not as to its vesting, and such remainder is a vested one. The uncertainty as to whether or not the remainderman will live to come into actual possession or enjoyment of the estate does not make the remainder contingent, for that is an uncertainty which attaches to all remainders.' "

Because the provision for the daughter involves a testamentary trust, appellees take comfort from a line of Nebraska cases involving testamentary trusts, such as In re Estate of Mooney, 131 Neb. 52, 267 N. W. 196 (1936). There, a testamentary trust was created for the benefit of the testator's son but the will made no provision for the disposition of the estate upon the death of the son. This court held the testator did not die intestate as to any of his estate and announced the rule that upon the failure of an express trust the trustee holds the trust estate upon a resulting trust for the heirs of the testator as of the date of the failure of the trust. This was the death of the son.

In Dennis v. Omaha National Bank, 153 Neb. 865, 46 N. W. 2d 606 (1951), the corpus was to vest absolutely in the issue or descendants of the children, all of whom died without issue. The court determined that the testator in establishing the trust devised all his estate, and the income therefrom as well, to the trustee, which of necessity vested in the trustee the whole estate or full title in fee simple, including the

title of the then uncertain and unascertained remaindermen until they were ascertained at the termination of the trust.

In Applegate v. Brown, 168 Neb. 190, 95 N. W. 2d 341 (1959), the will directed that the estate be reduced to cash and the trustees make investments and pay the income to certain beneficiaries. No provision was made for the disposition of the corpus of the trust. This court held the corpus passed to testator's heirs determined as of the date of the termination of the trust.

Abbott v. Continental Nat. Bank, 169 Neb. 147, 98 N. W. 2d 804 (1959), is closer on its facts to the present case. There the will set up a trust for the benefit of the testator's wife and directed the trustee to pay the income of the trust fund to her during life "and upon her death to pay the principal thereof to my legal heirs." The wife brought an action to determine her interest in the corpus of the trust. The author of this opinion, who was then the trial judge in Abbott, held she had no interest in the corpus of the trust; and that on her death it would pass to the testator's brothers and sisters in whom it vested at his death. This court affirmed the portion of the judgment holding she had no interest in the corpus, but reversed the trial court on the time of vesting. This court held the heirs of the testator were to be determined at the death of the wife and the termination of the trust. Appellees House argue Abbott is controlling herein.

Appellants take comfort from and rely on Goodrich v. Bonham, 142 Neb. 489, 6 N. W. 2d 788 (1942). There testator devised certain real estate to his son in trust to pay the income to his daughter, subject to the payment of certain expenses. Upon the death of his daughter, title to the property was to vest in fee simple in his son, the trustee. In case of the death of his son before his daughter, he requested the appointment of some suitable person as trustee to con-

tinue the trust. The son predeceased the daughter, but prior to his death had been adjudged a bankrupt. In the bankruptcy proceedings he scheduled as real estate owned by him the "reversionary interest" in the property in question. Defendant Bonham purchased the son's interest from the trustee in bankruptcy and received a deed for it. The plaintiffs, testator's heirs, brought an action to construe the will and to quiet the title to the property in them, contending that when the son predeceased the daughter his contingent interest lapsed and that Bonham took nothing under the deed from the trustee in bankruptcy. Bonham's demurrer was sustained and the judgment of dismissal affirmed in this court.

This court in Goodrich followed certain rules for the construction of wills: "* * * the basic rule is that the testator's intent must be determined from the language used in the will, and, when so ascertained, that intent must be given effect, if it is not contrary to law.

"In construing a will, it is presumed that the testator intended to dispose of his entire estate, unless the contrary is apparent from the will itself."

In Goodrich, this court held it was clear from an analysis of the will as a whole that testator intended to create a life estate in trust for his daughter and a remainder in fee simple to the son in the lot in question. It followed the policy that the law looks with favor upon the early vesting of estates and a remainder will never be held to be contingent if it can reasonably be held to be a vested remainder. Goodrich, however, is distinguishable from the present case on the fact that the son was specifically named as the remainderman and was the trustee. There was no question as to the intent of the testator. The court quoted the following from DeWitt v. Searles, 123 Neb. 129, 242 N. W. 370 (1932): " 'Testators are ordinarily and primarily concerned in the com-

mencement, continuance and termination of the enjoyment of property by them devised and bequeathed. Apart from statute, the weight of authority recognizes this fact, and, when a contrary intent is not clearly expressed, construes such expressions as "upon the death of" as, in effect, related to and affecting the enjoyment of property, rather than establishing and vesting technical estates and involved titles.' ''

Testator's will was made in his last illness, the day before his death. It was written in longhand on a will form, with an attached sheet, apparently by one of the witnesses, one of whom was an attorney. It made ample provision for testator's wife. It then gave, devised, and bequeathed to the daughter all the income over and above taxes and necessary expenses or upkeep during her lifetime from certain specifically described property. It then gave, devised, and bequeathed that income-producing property to his executor in trust to pay the income to the daughter.

We are concerned with the following provisions: "If my said daughter die without issue, then said real estate described in this paragraph shall descend at her death to my heirs-at-law by blood relation. If my said daughter dies leaving issue then said real estate is to go to her issue absolutely." Later in the will he stated: "* * * it being my intention hereby to convey and devise unto my executor the above described real estate from which my said daughter is to get the net income, in trust, for the payment of said income to my daughter during her life and at her death without issue surviving her, said real estate shall descend to my heirs-at-law who are related to me by blood, and that if she die leaving issue surviving her, then said real estate shall descend to her lineal heirs-at-law absolutely in fee simple."

We conclude Goodrich is not controlling on the facts herein. It is further distinguishable upon an

aspect of the case which, although mentioned by the appellees, was neglected in their research of the authorities. This aspect is one of first impression in this state. We refer to the fact that Nellie, the daughter of the decedent, was his sole issue at his death and under our statute was the sole heir-at-law related to him by blood.

Determining the time of the vesting of the remainder in this instance is a difficult problem. If we distinguish the Abbott case, which appellees House argue is controlling, it is possible to find authority going either way in other jurisdictions. However, Restatement on the Law of Property has adopted the rule that an incongruity in this situation is present if we follow the rule applied by the trial court. Restatement, Property, § 308, comment k, p. 1715, states in part: "k. Contrary intent — Postponing time of statute's application — Prior interest in sole heir or next of kin. If a person to whom a prior interest in the subject matter of the conveyance has been given is the sole heir of the designated ancestor at the death of such ancestor, there is incongruity in also giving such person all the interest under the limitation to 'heirs' or 'next of kin.' The incongruity is especially great when a will conveys property 'to B and his heirs but if B dies without issue to my heirs' and B is the sole heir of A. The incongruity is almost as great when A, by will, conveys property 'to B for life then to my heirs' and B is the sole heir of A. Thus, the fact that in such cases, B is the sole heir of A at the death of A tends to establish that A intended his heirs to be ascertained as of the death of B, so that B is prevented from sharing in the limitation to the heirs of A."

The Maine court, in a case closely analogous on the facts to the instant one, in spite of its early vesting rule, held the determination of heirship was to be made at the death of the life beneficiary. In that case, Merrill Trust Co. v. Perkins, 142 Me. 363,

53 A. 2d 260 (1947), testator devised the residue of his estate in trust for the benefit of his granddaughter. He provided if she should die leaving issue then the remaining trust estate was to go to such issue. If she left no issue, then the remainder should go to those persons to whom it would be distributed and to whom it would pass by descent under the statutes of the State of Maine regulating descent and distribution of intestate estates. The granddaughter died in 1945 without issue. The Maine court made no reference to the Restatement rule or the possible incongruity. It cited English cases, as well as prior decisions of its own, in support of the principle that in such situation it is the intent of the testator that the heirs who take such contingent remainder be determined as of the date of the death of the life tenant.

The same rule was applied in an analogous Missouri case, Irvine v. Ross, 339 Mo. 692, 98 S. W. 2d 763 (1936). The testator in effect bequeathed to his daughter property for her life and upon her death, without issue surviving, the property would go to the heirs of the testator. The court stated that since the daughter was the sole heir apparent at the time the testator made his will, it seemed clear that he had intended her to take a life estate and the remainder to go to her descendants if she had any, but if not, to the heirs of the testator taken as of the time of her death and hence his intention as gathered from all the dispositive clauses of the will was not to use the word "heirs" in its technical sense as meaning those living at the decease of the testator.

In Jones v. Petrie, 156 Kan. 241, 132 P. 2d 396 (1943), testator devised land to his widow for life with the remainder at her death to be divided among the other heirs "of my wife and myself, the heirs of my wife to take a one-half (½) interest and my heirs to take the other one-half (½) interest, and I give and bequeath such remainder to such heirs of myself and my wife." In a partition action to deter-

mine the rights of the parties, the court held that the testator intended to create only one remainder estate vesting at the death of his wife, one-half in her heirs and one-half in the testator's heirs at said time. It reasoned the testator must have known that his wife was his heir if she survived him, and that he did not intend the remainder to vest until the death of his wife.

In a Wisconsin case, In re Latimer's Will, 266 Wis. 158, 63 N. W. 2d 65 (1954), the will provided for a limitation over to the heirs of the testatrix and the heirs of her deceased husband following the expiration of a life estate. The granddaughter, who was the life beneficiary, was also the sole heir-at-law of testatrix' husband. The Wisconsin court held: " 'If a person to whom a prior interest in the subject matter of the conveyance has been given is the sole heir of the designated ancestor at the death of such ancestor, there is an incongruity in also giving such person all the interest under the limitation to 'heirs' or 'next of kin.' '' Thus to avoid the incongruity, the determination of the class of persons who qualify as such heirs is ordinarily to be made as of the death of the taker of the prior interest.

The Wisconsin court quoted Restatement and made the following observation: "Professor Lewis M. Simes, author of The Law of Future Interests, and one of the advisors on Property to the American Law Institute, is in agreement with the principle adopted by the Restatement. See 2 Simes, Law of Future Interests, p. 234, sec. 422, wherein Simes states: 'Where the donee of the possessory interest is the sole heir of the testator and there is a future interest to the testator's heirs, the situation is more difficult of solution. Here the heir cannot be excluded if we determine the testator's heirs as of the testator's death, since, if that were done, there would be no one but the sole heir to take the future interest; and, if he is excluded, no one is left. The

only way to exclude him is to determine heirship as of a time subsequent to the testator's death and thus include a different group of persons in the class.' ''

As this court has said many times, the first consideration in construing a will is to determine the testator's intent and a basic rule in this connection is that the intent must be determined from the language used in the will. See Goodrich v. Bonham, 142 Neb. 489, 6 N. W. 2d 788 (1942).

In this will, the testator set up a testamentary trust for his daughter, who was then 42 or 43 years of age, with a life expectancy of approximately 28 to 30 years. She was married but had no children. However, the possibility she could still have issue was present. If she died leaving issue, testator wanted that issue to take the property in fee simple. This was the first contingency and necessarily would have to be determined at the date of the death of the daughter. If she died without issue, testator wanted the property to go to his heirs-at-law by blood relation. At the time of his death, other than his daughter, his blood relatives were three nephews and two nieces. The testator would surely have known that these nieces and nephews were his sole blood relatives if his daughter were not considered. They were so few it would have been an easy matter to have said "nephews and nieces" if he was thinking in terms of the estate vesting at the time of his death. Rather, he used the term "my heirs-at-law by blood relation." On two different occasions he indicated he was thinking in terms of the property vesting at the time of his daughter's death. In one place, he said "shall descend at her death to my heirs-at-law, by blood relation." Where he explains his intention, he again says, "and at her death without issue surviving her, said real estate shall descend to my heirs-at-law who are related to me by blood."

While ordinarily such words as "at her death" do

not have the effect of postponing the vesting of an estate in remainder, this is not true, if when read in context, the intention of the testator would appear to be otherwise. Construed in the context of the contrary intent expressed by the Restatement rule, we hold the remainder interest herein vested at the date of the death of the daughter rather than that of the testator.

In the will under consideration, John R. House had made ample provision for his wife. It is obvious, he then had it in mind to provide definitely and immediately for the comfort and support of his daughter during her lifetime. His daughter was married and it appears obvious he did not want any spouse to control the property. His daughter was in his mind first and last as the principal person to be provided for. If she had issue, which at that time was still a possibility, he wanted that issue to take the property in fee simple absolute. It also appears obvious he did not want any spouse to succeed to any part of his estate. While the ages of the nieces and nephews is not a matter of record, their ancestors, who were brothers of the testator, had predeceased him. All the nephews and nieces predeceased the testator's daughter. From the way the will is drawn, it seems obvious to us the testator in this instance was thinking of blood relations as of the date of the death of his daughter without issue.

Commenting further on the intent of the testator, it is obvious he was particularly desirous that none of his estate pass to those who were not blood relatives at the time of the death of his daughter without issue. If we were to follow the rule applied by the trial court and vest the remainder in the two nieces and three nephews at the time of the death of John R. House, this intent could be thwarted. All the nieces and nephews died before his daughter. Any surviving spouses of those nieces and nephews would be included as their heirs-at-law. Applying the Re-

statement rule and vesting the remainder interest at the death of the life beneficiary rather than at the death of the testator will carry out the intent of the testator.

As suggested at the outset, there are decisions in other jurisdictions going both ways. There are decisions in jurisdictions other than those cited herein which follow the Restatement rule. There are other jurisdictions which hold that the Restatement rule in and of itself is not sufficient to show a contrary intent. Many of these cases are collected in an Annotation at 30 A. L. R. 2d 416. With the split in authority on this issue of first impression, we take cognizance of the Restatement rule, and apply it to the facts in this case.

The conclusion we reach makes it unnecessary to consider the validity of the contracts herein. It is also unnecessary to consider whether the judgment recovered in the federal court action satisfied the fee obligation. On the facts in this case, we hold the remainder interest vested at the termination of the trust, the death of the daughter, December 29, 1974.

We affirm the dismissal of the action of the plaintiffs for the reasons given herein, rather than those given by the trial court. We reverse the judgment of the trial court insofar as it vested the remainder interest in the heirs of the testator determined as of the date of his death. We remand the cause to the District Court with directions to enter judgment in accordance with this opinion; to determine the heirs of the blood of John R. House as of December 29, 1974; and to enter a decree of partition for said heirs.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.